# In the United States Court of Federal Claims

No. 07-452 V
E-Filed Under Seal: May 15, 2014[1]
E-filed for Publication: May 30, 2014

|  |  |  |
|---|---|---|
| DEBRA CHUISANO, as Legal Representative of the Estate of FRANCES D'ESPOSITO, deceased, | ) ) ) ) | |
| Plaintiff, | ) ) ) ) | Vaccine Injury Claim; Attorneys' Fees; Costs; Denial; Reasonable Basis; 42 U.S.C. § 300aa-15(e)(1); Totality of the Circumstances; Attorney Activities or Conduct; Statute of Limitations |
| v. | ) ) ) | |
| THE UNITED STATES, | ) ) | |
| Defendant. | ) ) ) | |

Robert T. Moxley, Washington, D.C., for plaintiff.

Glenn A. MacLeod, Senior Trial Counsel, with whom were Stuart F. Delery, Assistant Attorney General, Rupa Bhattacharyya, Director, Vincent J. Matanoski, Deputy Director, and Catherine E. Reeves, Assistant Director, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.

## OPINION AND ORDER

CAMPBELL-SMITH, Chief Judge.

Petitioner seeks attorneys' fees and costs for an unsuccessful claim under the National Childhood Vaccine Injury Act of 1986 (Vaccine Act), codified as amended at 42

---

[1]     Pursuant to Vaccine Rule 18(b) of the Rules of the United States Court of Federal Claims, this opinion initially issued under seal to provide the parties the opportunity to object to the public disclosure of information contained within it.  Neither party requested any redactions.  The opinion is reissued for publication with some minor, non-substantive corrections.

U.S.C. § 300aa-1 to -34 (2012).[2]  Pet'r's Mot. Review (Pet'r's Mot.), Nov. 25, 2013, ECF No. 80; Pet'r's Mem. of Objections (Pet'r's Mem.), Dec. 16, 2013, ECF No. 86.  The special master denied fees and costs to both petitioner's original counsel and her substitute counsel.  Chuisano v. Sec'y Dep't Health & Human Servs., Case No. 07-452V, 2013 WL 6234660 (Fed. Cl. Spec. Mstr. Oct. 25, 2013) (Special Master Moran) (Fee Dec.).  On review, the central question is whether the special master erred in concluding petitioner's claim lacked a "reasonable basis," as required for a fee award under 42 U.S.C. § 300aa-15(e)(1), in light of petitioner's failure to adduce any evidence of causation-in-fact of a vaccine-related injury.  The court **SUSTAINS** the special master's decision because it was not "arbitrary, capricious, an abuse of discretion, or not in accordance with law."  See 42 U.S.C. § 300aa-12(e)(2)(A)–(C); Vaccine Rule 27(b).[3]

I.      BACKGROUND[4]

    A.    Medical History

    Petitioner Debra Chuisano's mother, Frances D'Esposito, was born in 1942.  Fee Dec., 2013 WL 6234660 at *2.  Ms. D'Esposito's medical records from 2004 reflect that she suffered from chronic obstructive pulmonary disease, chronic asthma, and arthritis.  Id.  On September 27, 2004, her doctor diagnosed an upper respiratory infection and prescribed an antibiotic.  Id.  On October 12, 2004, Ms. D'Esposito received an influenza (flu) vaccine.  Id.  Four days later, she had aches, fever, and a sore throat.  Id.  Her primary care physician diagnosed "a viral syndrome" and did not prescribe more antibiotics.  Id.  On October 18, 2004, she was admitted to the hospital for breathing difficulties.  Id.  Her admission history notes that she recently had received a flu vaccine.  Id.  Her initial diagnosis was pneumonia and sepsis, and subsequent laboratory tests detected streptococcus pneumonia.  Id.  She remained in the hospital as her condition deteriorated and until she died on December 24, 2004.  Id.  The conditions listed on her discharge summary are pneumonia and congestive heart failure.  Id.  Her death certificate attributes cause of death to adult respiratory distress syndrome due to pneumococcal pneumonia and sepsis.  Id.

---

[2]      For ease of citation, all "§" references to the Vaccine Act will be to the pertinent subsection of 42 U.S.C. § 300aa-1 to -34 (2012).

[3]      The "Vaccine Rules" govern vaccine injury compensation claims before the Office of Special Masters and this court.  They are set forth in Appendix B of the Rules of the United States Court of Federal Claims (RCFC).

[4]      The medical and procedural history is taken primarily from the special master's decision and counsels' timesheets.  It is undisputed unless otherwise noted.

B.     Procedural History

Ms. Chuisano approached the law firm of Conway, Homer & Chin-Caplan (CHC-C) in early March 2005 to discuss a potential vaccine claim because she believed her mother died as a result of receiving the flu vaccine.  Id.  CHC-C specializes in the representation of claimants asserting vaccine-related injuries.  See CHC-C Website, http://www.ccandh.com/default.asp (last visited May 12, 2014).  CHC-C tasked Ms. Chuisano with "forward[ing] records and estate docs."  Fee Dec., 2013 WL 6234660 at *2.  CHC-C communicated periodically with Ms. Chuisano about the medical records but, "for reasons not explained" in the record, more than a year went by and CHC-C was still waiting for materials.  Id.  In the fall of 2006, the firm sent Ms. Chuisano a "reject letter;" however, she responded expressing a desire to continue her case.  Id.  On December 21, 2006, CHC-C reviewed a discharge summary provided by Ms. Chuisano.  Id. at *2–3.  After reviewing the discharge summary, CHC-C accepted the case pending receipt of the estate documents.  Id. at *3.  Legal representation appears to have been formalized in late January or early February, 2007.  See CHC-C Timesheets, ECF No. 49-6 (attached as Exhibit 14 to petitioner's first motion for fee and costs, filed with the special master on December 16, 2011).  Over the ensuing five months, CHC-C received estate documents and, for the first time, the firm began active pursuit of Ms. D'Esposito's medical records.  Fee Dec., 2013 WL 6234660 at *3.

CHC-C filed Ms. Chuisano's vaccine petition on June 28, 2007, just days before the limitations period expired on July 1, 2007.[5]  Id.  It was a "skeletal petition," id., that did not meet content requirements, see § 300aa-11(c); Vaccine Rule 2(c), but did aver that "the necessary '[d]ocuments and affidavits in support of the petition [would] be filed, once received,'" Resp't's Mem. in Resp. to Pet'r's Mot. (Resp't's Mem.), Jan. 15, 2014, ECF No. 87, at 3 (quoting Petition at 2).

According to CHC-C's timesheets, CHC-C had received and reviewed Ms. D'Esposito's discharge summary before the petition was filed.  Fee Dec., 2013 WL 6234660 at *3.  Ms. D'Esposito's discharge summary indicated that she had suffered from pneumonia and respiratory distress syndrome and died from congestive heart failure, but did not mention the flu vaccine.  Id.  The firm also had received records from two medical providers; however, there is no evidence that an attorney reviewed these records before the firm filed the petition.  Id.  Those records were not included with the filed petition.  Id.  The records reflect that in February 2004 (approximately eight months before receipt of the flu vaccine), a doctor determined Ms. D'Esposito required a portable

---

[5]     "At the time, controlling precedent indicated that compliance with the statute of limitations was a jurisdictional issue and equitable tolling was not permitted."  Fee Dec., 2013 WL 6234660 at *3 n.6 (citing Brice v. Sec'y Health & Human Servs., 240 F.3d 1367 (Fed. Cir. 2001), overruled, Cloer v. Sec'y Health & Human Servs., 654 F.3d 1322 (Fed. Cir. 2011), cert. denied, 132 S. Ct. 1908 (2012)).

nebulizer because of "chronic and acute asthma." Id. (citation omitted).  The doctor also described Ms. D'Esposito's "pulmonary disease" as "very unstable." Id. (citation omitted).

On November 26, 2007, nearly five months after filing the petition, the petitioner filed her initial medical records, of which the vast majority came from Good Samaritan Hospital.  Id. at *4; see also Notice of Filing, ECF No. 14.  Petitioner subsequently filed an Amended Petition and her affidavit on January 14, 2008.  Am. Petition, ECF No. 17; Affidavit, ECF No. 18.

Respondent filed its report on May 30, 2008, pursuant to Vaccine Rule 4(c).  The report recommended against compensation because petitioner had not satisfied the criteria for receiving compensation under the Vaccine Act.  Fee Dec., 2013 WL 6234660 at *4.  Specifically, respondent pointed to, inter alia, Ms. D'Esposito's medical records revealing multiple bouts of respiratory infection between 2002 and 2004; her death certificate attributing death to non-vaccine-related causes; and the fact that none of her treating physicians ascribed her death to the flu vaccine, despite their awareness of its temporal proximity.  Id.

In the ensuing two months, CHC-C consulted with two immunologists, seeking an expert opinion on causation.[6]  Id.  One of petitioner's attorneys, Ms. Sylvia Chin-Caplan, also drafted a letter detailing her theories on causation.  Id.  CHC-C shared this letter with at least one of the potential experts.  Id.  The firm was unsuccessful in retaining an expert. See id. at *5 (discussing efforts in greater detail).  By this time, CHC-C had invested approximately 190 hours in petitioner's representation; it had also been given four extensions of time to file an expert report.  Id.

CHC-C sent petitioner a "reject letter" and, on August 17, 2009, filed a motion to withdraw as counsel of record.  Id.  In October and November, before the court ruled on withdrawal, CHC-C provided petitioner's materials to Mr. Robert Moxley, another seasoned vaccine program litigator.  See id.

On November 16, 2009, the court substituted CHC-C for Mr. Moxley as petitioner's new attorney of record.  See Consented Mot. Substitute, ECF No. 38.  Mr. Moxley continued CHC-C's efforts to obtain an expert opinion to support a causation

---

[6]    CHC-C's timesheets reflect two internal conversations about potential experts on December 27–28, 2007; the conversations occurred after the firm had filed medical records but before it filed the amended petition.  See CHC-C Timesheets, ECF No. 49-6 (attached as Exhibit 14 to petitioner's first motion for fees and costs filed with the special master on December 16, 2011).  Otherwise, timesheet entries regarding expert retention and communications do not start in earnest until July 2008, after CHC-C received respondent's report.  See id.

theory. Fee Dec., 2013 WL 6234660 at *5.  Timesheets reveal Mr. Moxley communicated on numerous occasions with CHC-C and reviewed Ms. Chin-Caplan's causation-theory letter.  Id.; see also Moxley Timesheets, ECF No. 49-2 (attached as Exhibit 10 to petitioner's first motion for fees and costs filed with the special master on December 16, 2011).  Timesheets also reflect that Mr. Moxley's firm attempted to reach one potential expert in April 2010, but the record is unclear what became of his firm's overtures. Fee Dec., 2013 WL 6234660 at *5; see also Moxley Timesheets.

In September 2010, petitioner was ordered to file a status report concerning her efforts to obtain an expert report.  Order, Sept. 27, 2010, ECF No. 39.  Petitioner responded that she "ha[d] been actively seeking a medical expert to support the causation syllogism required by the Vaccine Act."  Pet'r's Status Report, Oct. 29, 2010, ECF No. 40, at ¶ 1.  Petitioner also shared her causation theory that "the flu virus has been observed to disrupt the molecular processes of the immune system, and to promote a synergistic effect whereby other infections have a greater opportunity [to cause harm]. Fatal pneumonia, for instance, is made much more likely."  Id. at 1 n.1; Fee Dec., 2013 WL 6234660 at *5 (quoting same).

After additional status reports, see Fee Dec., 2013 WL 6234660 at *6, petitioner was ordered to file an expert report by May 16, 2011, or "[i]f . . . unable to find an expert to opine as to causation, . . . [then] a motion for ruling on the record," Order, Feb. 15, 2011, ECF No. 45.

On May 16, 2011 (roughly a year and a half after Mr. Moxley assumed representation), petitioner moved for a decision on the record.  ECF No. 46.  On May 18, 2011, the special master entered his no-compensation decision finding petitioner had failed to meet her burden of proof.  See Chuisano v. Sec'y Dep't Health & Human Servs., Case No. 07-452V, 2011 WL 2268969 (Fed. Cl. Spec. Mstr. May 18, 2011) (Liability Dec.); see also Judgment, June 20, 2011, ECF No. 48.  He found that petitioner "failed to demonstrate either that Ms. D'Esposito suffered a 'Table Injury' or that her injuries were 'actually caused' by a vaccination."  Liability Dec., 2011 WL 2268969 at *1.  Petitioner offered only her own statement and evidence of temporal proximity to support her claim of a causal relationship between the vaccine's administration and Ms. D'Esposito's death.  Id.  However, this evidence was insufficient.  Id.; see also § 300aa-13(a)(1) (a special master may not award compensation "based on the claims of a petitioner alone, unsubstantiated by medical records or medical opinion").  Petitioner pointed to no medical records, nor did she offer any expert opinion, to support a finding of causation-in-fact.  Liability Dec., 2011 WL 2268969 at *1.  The special master's decision denying program compensation has not been appealed, but petitioner has sought fees and costs.

On September 20, 2012, the special master entered an initial decision awarding reduced fees and costs to CHC-C ($38,365.45 of the $40,946.65 requested), but denying an award of fees and costs to Mr. Moxley, for which he had requested $3,706.90.  See Fee Dec., 2013 WL 6234660 at *6–7 (describing earlier fee decision, filed September 20,

2012, ECF No. 63, that was later withdrawn per Order, filed October 15, 2012, ECF No. 65); see also Resp't's Mem. 5–6 & 5 n.4 (dollar amounts).  In this initial fee decision, the special master found that CHC-C had a "reasonable basis" for pursuing petitioner's claim through the filing of her petition (on the eve of the statute of limitations deadline), the subsequent gathering of medical records, and the efforts to retain an expert.  Fee Dec., 2013 WL 6234660 at *7 (describing initial fee decision).  Mr. Moxley, however, lacked a "reasonable basis" to proceed with petitioner's claim after CHC-C had been unable to obtain an expert opinion supporting a finding of vaccine-related causation.  Id. (describing initial fee decision).

On October 11, 2012, petitioner sought reconsideration of the total denial of Mr. Moxley's fees and costs.  See Pet'r's Mot. Recons., ECF No. 64.  Petitioner argued that the initial fee decision was premised on an erroneous view of the law.  Id. at 2.  According to petitioner, "reasonable basis" for a claim was a one-time inquiry; thus, if the case began under CHC-C with a reasonable basis, then the reasonable basis continued to exist when Mr. Moxley later assumed representation.  Id.  Petitioner "pray[ed] an order of the court, setting aside and vacating the [initial fee decision], for reconsideration of the [initial fee decision] and an appropriate award for reasonable fees and costs to successor counsel under the correct legal standard . . . ."  Id. at 8.

In response, the special master issued an order on October 15, 2012 that granted petitioner's reconsideration motion in part, by withdrawing the initial fee decision and soliciting further briefing on the fee issue.  ECF No. 65.  As the initial fee decision had been withdrawn, the government's briefing on reconsideration, as well as petitioner's reply, addressed not only the propriety of fees and costs for Mr. Moxley, but for CHC-C as well.  Fee Dec., 2013 WL 6234660 at *7 (discussing the scope of reconsideration briefing).

On October 25, 2013, the special master entered his final decision denying in toto the fees and costs sought by both CHC-C and Mr. Moxley.  Fee Dec., 2013 WL 6234660 at *1, 23–24.  The special master found that a fee and cost award would be inappropriate.  Id. at *1.  Without supportive evidence of causation-in-fact, petitioner lacked a reasonable basis for her claim.  Id.  Afforded the opportunity to reconsider his earlier decision awarding fees and costs to CHC-C, the special master was persuaded by the government's argument that "the pendency of the statute of limitation does not dispense with the petitioner's obligation to furnish some evidence supporting the claim contained in the petition."  Id.  Therefore, the special master reconsidered the leeway he had accorded CHC-C for filing the petition on the eve of the statute of limitations' expiration—the circumstance that informed his initial decision to award fees to that firm.  See id.  He ultimately concluded, with regard to petitioner's claim as a whole, that there remained a "gap in evidence [ ] despite Ms. Chuisano's retention of two separate law firms and the participation of at least three doctors."  Id.  The special master determined that "[w]ithout any evidence linking Ms. D'Esposito's death to her flu vaccination, Ms.

Chuisano's case lacked a reasonable basis. And, without a reasonable basis, [her counsel] may not be awarded any attorneys' fees." Id.

Now before the court is petitioner's motion for review of this final fee decision, see Pet'r's Mot.; Pet'r's Mem., and the government's response, see Resp't's Mem. Neither party has challenged petitioner's good faith in filing her petition. Fee Dec., 2013 WL 6234660 at *1 n.2. The sole issues are (1) whether the special master erred in concluding there was never a "reasonable basis" for her claim; and (2) whether he abused his discretion by denying fees and costs to either CHC-C or Mr. Moxley. Oral argument was deemed unnecessary. The matter is now ripe for decision.

## II.    STANDARD OF REVIEW

The Court of Federal Claims has jurisdiction to review the decision of a special master. 42 U.S.C. § 300aa-12(e)(1); see also Vaccine Rule 23. After engaging in its review, the court may take one of three actions: (1) uphold the special master's findings of fact and conclusions of law and sustain the special master's decision; (2) set aside some or all of the special master's findings of fact and conclusions of law and issue different findings of fact and conclusions or law; or (3) remand the petition for further action in accordance with the court's direction. § 300aa-12(e)(2)(A)–(C); see also Vaccine Rule 27.

The court may set aside a special master's decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." § 300aa-12(e)(2)(B). As the Federal Circuit has explained:

> These standards vary in application as well as degree of deference. Each standard applies to a different aspect of the judgment. Fact findings are reviewed . . . by [the Court of Federal Claims] under the arbitrary and capricious standard; legal questions under the 'not in accordance with law' [de novo review] standard; and discretionary rulings under the abuse of discretion standard.

Munn v. Sec'y Dep't Health & Human Servs., 970 F.2d 863, 870 n.10 (Fed. Cir. 1992) (commenting further that an "abuse of discretion" will "rarely come into play except where the special master excludes evidence"); accord Saunders v. Sec'y Dep't Health & Human Servs., 25 F.3d 1031, 1033 (Fed. Cir. 1994) (quoting same).

Notably, a special master's decision whether to award or deny attorneys' fees and costs to unsuccessful petitioners is discretionary and, thus, reviewed under an abuse of discretion standard. Saxton v. Sec'y Dep't Health & Human Servs., 3 F.3d 1517, 1520 (Fed. Cir. 1993) (citing Perreira v. Sec'y Dep't Health & Human Servs., 27 Fed. Cl. 29, 31 (1992)); accord Silva v. Sec'y Health & Human Servs., 108 Fed. Cl. 401, 405 (2012); Murphy v. Sec'y Dep't Health & Human Servs., 30 Fed. Cl. 60, 61 (1993); Hamrick v.

Sec'y Health & Human Servs., Case No. 99-683V, 2007 WL 4793152, *3 (Fed. Cl. Spec. Mstr. Jan. 9, 2008) (Special Master Moran).  "This [discretion] is appropriate in view of the [special master's] superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters."  Saxton, 3 F.3d at 1521 (quoting Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)).

For a finding of abuse of discretion, a court would have to rule that a special master's decision was:

> (1) . . . clearly unreasonable, arbitrary, or fanciful; (2) . . . based on an erroneous conclusion of the law; (3) . . . clearly erroneous; or (4) the record contains no evidence on which the . . . [special master] rationally could have based his decision.

Murphy, 30 Fed. Cl. at 61 (quoting Hendler v. United States, 952 F.2d 1364, 1380 (Fed. Cir. 1991) (citation omitted)); see also Munn, 970 F.2d at 870 (explaining this court owes "great deference" to the fact-findings and fact-based conclusions of the special master); Silva, 108 Fed. Cl. at 405 (stating it is "extremely difficult" to establish the "reversible error" necessary to disturb a special master's decision on fees).  An "abuse of discretion may only be found where 'no reasonable man would take the view adopted by the [trial] court . . . .'"  Murphy, 30 Fed. Cl. at 62 (quoting PPG Indus., Inc. v. Celanese Polymer Specialties Co., 840 F.2d 1565, 1572 (Fed. Cir. 1988)).

The Federal Circuit has described a reasonable fee calculation as follows:

> A reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate . . .  [but] should exclude . . . hours that were not "reasonably expended" . . . [such as] hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.  . . . Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.

Saxton, 3 F.3d at 1521 (quoting Hensley, 461 U.S. at 433–34).

The special master's "'range of choice' . . . will not be reversed if 'it stays within that range and is not influenced by any mistake of law.'"  Murphy, 30 Fed. Cl. at 62 (quoting Heat & Control, Inc. v. Hester Indus., Inc., 785 F.2d 1017, 1022 (Fed. Cir. 1986) (citation omitted)).  If, however, the exercise of discretion turns on a potentially erroneous statutory interpretation of the Vaccine Act (a question of law), then the court will review the interpretation without deference.  Avera v. Sec'y Health & Human Servs., 515 F.3d 1343, 1347 (Fed. Cir. 2008) (citing Markovich v. Sec'y Health & Human Servs., 477 F.3d 1353, 1355–56 (Fed. Cir. 2007)); see Andreu v. Sec'y Health & Human Servs., 569 F.3d 1367, 1379 (Fed. Cir. 2009) (explaining that, while "considerable

deference [is due to] the credibility determinations of special masters . . . this does not
mean that a special master can cloak the application of an erroneous legal standard in the
guise of a credibility determination, and thereby shield it from appellate review")
(citation omitted); see also Saunders, 25 F.3d at 1033 (reviewing a fee award without
deference where the propriety of the award turned on construction of the Act's election
provision).

III.   DISCUSSION

A.    The "Reasonable Basis" Standard

If a petitioner succeeds on the merits of his or her compensation claim, the
Vaccine Act requires the special master to award reasonable fees and costs.  § 300aa-
15(e)(1).  However, the special master also enjoys discretion to award fees and costs to
unsuccessful petitioners, provided the unsuccessful petition was filed in good faith and
there was a reasonable basis to support the claim.  Id.; Sebelius v. Cloer (Cloer III), 133
S. Ct. 1886, 1891–92 (2013) (discussing standard); Avera, 515 F.3d at 1347 (same).  If a
special master determines that there is good faith and a reasonable basis for a claim, "he
or she may award the fees."  Silva, 108 Fed. Cl. at 403.  It is nevertheless possible that,
after making the required findings of good faith and reasonable basis, the special master
may decline to award fees or costs.  Id. at 402 n.5.

The statute offers no further explanation or definition of what constitutes a
"reasonable basis."  Moreover, as the special master correctly noted, "[n]either the
Federal Circuit nor [the Court of Federal Claims] has had occasion to define the meaning
of 'reasonable basis' for purposes of fee awards under the Vaccine Act."  Fee Dec., 2013
WL 6234660 at *11 (quoting Woods v. Sec'y Health & Human Servs., 105 Fed. Cl. 148,
153 (2012)).

The Circuit Court has observed, however, that "[s]tatutory construction . . . is a
holistic endeavor."  Figueroa v. Sec'y Health & Human Servs, 715 F.3d 1314, 1318 (Fed.
Cir. 2013) (citation omitted).  To that end, "the language of [the Vaccine Act must be
considered] in light of the specific context in which that language is used, and the broader
context of the statute as a whole."  Id. (citation and quotation omitted).  Further to the
Circuit Court's guidance, the court finds here that recognizing a special master's
discretion to make a fee award is paramount to developing a set of finite rules or criteria.
Other decisions of the court appear to agree.  See, e.g., Silva, 108 Fed. Cl. at 402 ("[T]he
statute grants to the special master maximum discretion in applying the standard.").  The
statutory text that includes the "reasonable basis" provision shows that Congress drew a
clear distinction between an automatic fee award for successful petitioners and a
discretionary award for unsuccessful petitioners.  See §300aa-15(e)(1).  This distinction
would be subverted by a set of inflexible rules or criteria defining "reasonable basis."
Moreover, such rules or criteria would strip a special master of his or her discretion and
authority to deny fees even to those claimants who show "reasonable basis" by, inter alia,

implying that an unsuccessful petitioner who meets the minimum threshold of defined requirements is entitled to a fee award as of right.  See Cloer v. Sec'y Health & Human Servs. (Cloer II ), 675 F.3d 1358, 1363 (Fed. Cir. 2012) (en banc) (disagreeing with the dissent, which advocated a strict rule that untimely petitions can never be found to have been supported by a reasonable basis).

A "reasonable basis" standard that is not rigidly defined—as amorphous as it may be—is consistent with the Vaccine Act as a whole.  The Federal Circuit has instructed that "[r]emedial legislation like the Vaccine Act should be construed in a manner that effectuates its underlying spirit and purpose."  Cloer II, 675 F.3d at 1362 (citing Atchison, Topeka, & Santa Fe Ry. Co. v. Buell, 480 U.S. 557, 561–62 (1987)); see also, e.g., Peyton v. Rowe, 391 U.S. 54, 65 (1968) (citing the "canon of construction that remedial statutes should be liberally construed").

"The overarching purpose of the Vaccine Act[,] and the National Childhood Vaccine Injury Compensation Program it create[d,] is to award compensation 'to vaccine-injured persons quickly, easily, and with certainty and generosity.'"  Cloer II, 675 F.3d at 1362 (quoting H.R. Rep. No. 99-908, at 3 (1986), reprinted in 1986 U.S.C.C.A.N. at 6344).  A vaccine-related injury, however, is not always clear at the outset.  As the Federal Circuit has noted, "[t]he first time an injury is causally linked with a vaccine often occurs as a result of a successful non-Table petition."  Cloer v. Sec'y Health & Human Servs. (Cloer I), 654 F.3d 1322, 1332 n.4 (Fed. Cir. 2011).  Congress would not have "intended to discourage counsel from representing petitioners who, because of the difficulty of distinguishing between the initial symptoms of a vaccine-related injury and unrelated malady . . . may [nevertheless] have good-faith claims with a reasonable basis. . . ."  See Cloer III, 133 S. Ct. at 1895.  Thus, "[a] stated purpose of the Act's fees scheme was to avoid 'limit[ing] petitioners' ability to obtain qualified assistance' by making fees awards available for 'non-prevailing, good-faith claims.'"  Id. (quoting H.R. Rep. No. 99-908, at 22); see also Cloer II, 675 F.3d at 1362 ("Congress recognized that having to shoulder attorneys' fees could deter victims of vaccine-related injuries from seeking redress.").

Although a special master may award fees and costs to unsuccessful petitioners under the Vaccine Act, the statute does not compel such awards.  "Congress [did] not . . . intend[] that every claimant, whether being compensated or not under the Vaccine Act, collect attorneys' fees and costs."  Perreira, 33 F.3d at 1377; Phillips v. Sec'y Dep't Health & Human Servs., 988 F.2d 111, 112–13 (Fed. Cir. 1993) (Plager, J., concurring) (stressing the negative ramifications of baseless appeals over the denial of fees and costs).  There is no textual, historical, or logical support suggesting otherwise.  Fee denials are expected to occur.  A different construction of the statute would swallow the special master's discretion.  See § 300aa-15(e)(1).  Congress vested such discretion with the special masters, plainly contemplating that not all petitioners would recover fees and costs.  If Congress had intended all or nearly all petitioners to recover fees, it easily could

10

have expanded fee awards to all petitions filed in good faith, rather than requiring good faith and a reasonable basis.

Also militating in favor of a discretionary authority that permits the denial of fee awards are common law principles and policy concerns.  As the dissent in <u>Cloer II</u> explained, "because Congress departed from the [prevailing party requirement applicable] in virtually every other federal fee-shifting statute, [the court] should be cautious in interpreting the statutory mandate to extend beyond those cases in which fee-shifting was clearly intended."  675 F.3d at 1367 (Bryson, J., dissenting) (providing background for its view that fees should not be recoverable for untimely petitions) (citing <u>Robert C. Herd & Co. v. Krawill Mach. Corp.</u>, 359 U.S. 297, 304–05 (1959)) (explaining that a rule of law "in derogation of the common law . . . must be strictly construed"); <u>In re Crescent City Estates</u>, 588 F.3d 822, 826 (4th Cir. 2009) ("Because fee-shifting statutes are 'in derogation of the common law,' courts are obliged to construe them strictly.") (citation omitted)).  Well-settled principles of sovereign immunity are also a consideration.  <u>Cloer II</u>, 675 F.3d at 1367.

Premised in pertinent part on reasonableness, the standard for discretionary fee awards allows for the practical and logical necessities of vaccine program practice.  As petitioner herself argues, "[i]n [these] scientifically complex, expensive, and controversial cases, the interpretation of 'reasonable basis' demands a common sense approach based upon the totality of the circumstances of each individual case."  Pet'r's Mot. 12.  Numerous special masters, as well as this court, have held that reasonable basis is an objective standard determined by the "totality of the circumstances."  <u>E.g.</u>, <u>McKellar v. Sec'y Health & Human Servs.</u>, 101 Fed. Cl. 297, 303 (Fed. Cl. 2011) (citing <u>Hamrick</u>, 2007 WL 4793152 at *4).  Some have further interpreted the requirement as one that looks not at the likelihood of success of a claim but more to the feasibility of the claim.  <u>See Di Roma v. Sec'y Health & Human Servs.</u>, No. 90–3277, 1993 WL 496981, *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993).  The circumstances are simply too numerous and diverse in which any particular individual, who is otherwise healthy or unhealthy, may subsequently suffer a vaccine-related injury, or an unrelated malady in temporal proximity to a vaccination, and then seek compensation.  Accordingly, the court finds that the special master's Fee Decision goes too far by rejecting, as a matter of course, any consideration of the totality of the circumstances.  <u>See</u> Fee Dec., 2013 WL 6234660 at *16 (favoring a reasonable basis standard premised exclusively on whether there is evidence constituting "supporting documentation" rather than a "totality of the circumstances" inquiry).

Nonetheless, the special master is correct that "[r]easonable basis is a standard that petitioners," at least generally, "meet by submitting evidence."  Fee Dec., 2013 WL 6234660 at *12.  Failure to submit such evidence "carries consequences."  <u>Id.</u> at *13.  "At the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis because the petitioner could not meet the burden of proof needed to

establish reasonable basis."[7]  Id.  "[A] 'petitioner must affirmatively establish a reasonable basis to recover attorneys' fees and costs.'"  Id. (quoting McKellar, 101 Fed. Cl. at 304).  This burden is something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim.[8]   Id.

Because "reasonable basis is linked to 'the claim' contained in the petition, not the petition itself," the reasonable basis inquiry is broad enough to survive a statute of limitations flaw in a petition.  Fee Dec., 2013 WL 6234660 at *15 & 15 n.26 (referring to § 300aa-15(e)(1), which links the "good faith" inquiry to the filing of the "petition," but the "reasonable basis" inquiry to support for the "claim"); Cloer III, 133 S. Ct. at 1894–95.  The court is similarly persuaded that the reasonable basis inquiry is broad enough to encompass any material submitted in support of the claim at any time in the proceeding, whether with the petition or later.

The court agrees with the special master that "[i]n the absence of a Federal Circuit instruction, it may be easier to define a reasonable basis in terms of what it is not."  Fee Dec., 2013 WL 6234660 at *13.  For example, "[r]easonable basis requires presenting more than evidence showing only that the vaccine preceded the onset of the injury for which the petitioner seeks compensation."  Id.  Temporal proximity is necessary, but not sufficient.  See id. at *14.

However, the court disagrees with the special master that "[a]ll these reasons support the [conclusion that] whether petitioners have met their burden regarding reasonable basis should not include consideration of the statute of limitations."  See id. at *16 (concluding same).  A looming statute of limitations does not forever absolve a petitioner from his or her obligation to proceed with a reasonable basis to support his claim, at least not if the petitioner hopes to recover any fees and costs.  See § 300(e)(1).

---

[7]    The special master cites two examples.  Fee Dec., 2013 WL 6234660 at *13 (citing Turpin v. Sec'y Health & Human Servs., No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding "no reasonable basis when petitioner submitted only one affidavit and no other records"); Brown v. Sec'y Health & Human Servs., No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. March 11, 2005) (finding "no reasonable basis when petitioner presented only e-mails between her and her attorney")).

[8]    An off-table petitioner must prove causation by the traditional tort standard of preponderant evidence, meaning that it is more probable than not that the petitioner in fact suffered a vaccine-related injury.  § 300aa-13(a)(1)(A); Moberly v. Sec'y Health & Human Servs., 592 F.3d 1315, 1322 & 1322 n.2 (Fed. Cir. 2010).

However, the statute of limitations is a factor that may affect the reasonable basis analysis in appropriate circumstances.[9]

The court also declines the special master's invitation to supplant the current reasonable basis test that is informed by a totality of the circumstances with a reasonable basis test that turns solely on evidentiary standards. See Fee Dec., 2013 WL 6234660 at *17 (acknowledging that his "decision's focus on evidence supporting a finding of reasonable basis is different from the treatment in other cases"). An evidentiary standard may serve as an excellent guidepost in fee decisions, but it cannot serve as the bright-line threshold. Such a rigid position is at variance with the flexible structure of the vaccine program.

The court considers the following. First, evidentiary rules are relaxed in vaccine proceedings. Griglock v. Sec'y Health & Human Servs., 687 F.3d 1371, 1376 (Fed. Cir. 2012) (citing § 300aa-12(d)(3)(B)); Masias v. Sec'y Health & Human Servs., 634 F.3d 1283, 1290 (Fed. Cir. 2011) ("[I]n Vaccine Act litigation, evidence need not be presented under the Federal Rules of Evidence.") (citation omitted). Second, an effort to engraft a test for reasonable basis onto the statute would disregard Congress's plain choice not to do so, but instead to maximize the special master's discretion. See § 300aa-15(e)(1). Third, even if this court were to adopt the proposed evidentiary standard, the court would be left to determine, just as the special master asks, "how much evidence is sufficient?" for a fee award to a non-prevailing party on an unsuccessful vaccine petition. See Fee Dec., 2013 WL 6234660 at *13.

In contrast, under the totality of the circumstances test for reasonable basis, a special master should consider a number of factors. McKellar, 101 Fed. Cl. at 303; Di Roma, 1993 WL 496981 at *1. Factors to be considered "include[e] the factual basis, the medical support, and jurisdictional issues," and the circumstances under which a petition is filed. Di Roma, 1993 WL 496981 at *1. Special masters have found reasonable basis for claims absent medical records or opinions supporting vaccine causation. See Austin v. Sec'y Health & Human Servs., No. 10–362V, 2013 WL 659574, *8 (Fed. Cl. Spec. Mstr. Jan. 31, 2013) (citing Hamrick, 2007 WL 4793152, at *7); Lamar v. Sec'y Health & Human Servs., No. 99–583V, 2008 WL 3845165, *4 (Fed. Cl. Spec. Mstr. July 30, 2008). A reasonable basis might even exist if a petition is filed in an untimely manner after the close of the statute of limitations. Cloer II, 675 F.3d at 1359–61, 1364 (finding petitioner would be eligible to receive fees and costs if, on remand, it was found her

---

[9]    The court does not need to address the degree of influence that a pending statute of limitations might have on the reasonable basis inquiry. In this case, even though petitioner and her counsel waited until the eve of the statute of limitations to file the petition, they had almost two years of notice of the potential claim, and opportunity to prepare, before the filing. See Fee Dec., 2013 WL 6234660 at *2 & *3 (noting petitioner approached the firm in 2005, but the petition was not filed until 2007).

petition was brought in good faith and her claim was supported by a reasonable basis, even though her petition was ultimately found untimely).

The conduct of petitioner's attorneys also may be relevant in some circumstances. A reasonable basis is lacking, for example, when a petitioner's attorney does not properly investigate a case before filing it. Silva, 108 Fed. Cl. at 405 (sustaining a finding of no reasonable basis when a petitioner's attorney failed to perform minimal investigation and no medical evidence suggested the vaccine caused the injury). Generally, a petitioner must furnish some evidence in support of the "claim for which the petition is brought" to establish the statutory requirement of reasonable basis. See Woods, 105 Fed. Cl. at 152 (finding that the special master erred in failing to sufficiently analyze whether there was a reasonable basis when the special master's decision "cited no allegations of injury or causation, no medical records, and no legal authority in determining that [p]etitioner's claim had a reasonable basis"); Turpin v. Sec'y Health & Human Servs., No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted only one affidavit and no other records); Brown v. Sec'y Health & Human Servs., No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney).

The special master acts within his or her discretion when revisiting the reasonable basis inquiry if such reconsideration is warranted by changed circumstances during the proceedings. See, e.g., Perreira, 33 F.3d at 1377; McKellar, 101 Fed. Cl. at 303. Although a claim may have had a reasonable basis at the time of its filing, reasonableness may later come into question if new evidence becomes available or the lack of supporting evidence becomes apparent. Perreira, 27 F.3d at 1377. "[W]hen the reasonable basis that may have been sufficient to bring the claim ceases to exist, it cannot be said that the claim is maintained in good faith." Id. at 1377 ("[O]nce petitioner-appellants reviewed the expert opinion upon which their case depended, they no longer had a reasonable basis for claiming causation-in-fact because the expert opinion was grounded in neither medical literature nor studies.").

In this case, petitioner has asserted that reasonable basis is a one-time inquiry, and once it is found to exist, it cannot be lost in later proceedings of the same case. See Pet'r's Mem. 9–11. Petitioner's argument is unpersuasive. First, petitioner places undue reliance on the case of Commissioner, I.N.S. v. Jean, 496 U.S. 154 (1990), which held that the government's "substantial justification" defense to a prevailing party fee award under the Equal Access to Justice Act (EAJA) operates as a "one-time threshold." Jean, 496 U.S. at 160. Fee-shifting provisions in the EAJA and the Vaccine Act are "fundamentally dissimilar," such that it is not helpful to analogize the EAJA's "substantially justified" standard to the Vaccine Act's "reasonable basis" standard. Morse v. Sec'y Dep't Health & Human Servs., 93 Fed. Cl. 780, 785 (2010) (explaining distinctions between the statutory provisions); see also Masias, 106 Fed. Cl. 700, 703

(2012) (explaining there are "important distinctions between the Vaccine Act and EAJA"). For example, EAJA awards are available to "prevailing parties" only. 28 U.S.C. § 2412(d)(1)(A). Also, the EAJA contains an explicit statutory check-and-balance framework—in addition to the substantial justification defense—that disallows recovery for any portion of the litigation in which the party has "unduly and unreasonably protracted the final resolution of the matter in controversy." See 28 U.S.C. § 2412(d)(1)(A), (1)(C).

Second, contrary to petitioner's contention, permitting further inquiry into reasonableness is not an invitation to propagate litigation. See Pet'r's Mem. 10 (arguing same). The court does not sanction the revisiting of a claim's reasonable basis for every case-related activity; nor does the court sanction the revisiting of a claim's reasonable basis at certain pre-set stages of a proceeding. See Morse, 93 Fed. Cl. at 786 (reversing special master's finding that a separate determination of reasonable basis is necessary for fees litigation). Rather, the court interprets the statute to permit the reexamination of a claim's reasonable basis if a notable change in circumstance should arise (such as here, when the original counsel was unable to find an expert to support causation, but substitute counsel continued with the litigation anyway). See Perreira, 33 F.3d at 1377 (affirming the special master's decision to deny the award of attorney fees for activities after petitioner received an expert opinion that was "grounded in neither medical literature nor studies"); Murphy, 30 Fed. Cl. at 62 (finding that expert testimony not corroborated by the facts was insufficient to establish reasonable basis for a fee claim), aff'd, 48 F.3d 1236 (Fed. Cir. 1995) (table); see also Stevens v. Sec'y Health & Human Servs., No. 90–221V, 1992 WL 159520, *4 (Cl. Ct. Spec. Mstr. June 9, 1992) (denying fees where doctor and lawyer ignored glaring factual shortcomings), aff'd, 996 F.2d 1236 (Fed. Cir. 1993).

The court also rejects petitioner's attempt to equate reasonable basis with an attorney's good faith or "professional judgment" in pursuing a claim. See Pet'r's Mem. 9, 19–20. Petitioner argues that "[t]he economics and dynamics of Program practice . . . requires the professional judgment of experienced attorneys . . . . [T]he Program would not function without the expectation that such professional evaluation will equate to a reasonable basis." Id. at 19. Section 15(e) has two distinct facets: good faith and reasonable basis. § 300aa-15(e)(1). Fees and costs on an unsuccessful vaccine-injury petition may be recovered only if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Id. (emphasis added). The statute is unambiguous that both requirements must be met before a petitioner becomes eligible for an award. Moreover, only "good faith" is subjective; "reasonable basis" is objective. McKellar, 101 Fed. Cl. at 303.

Further, petitioner misinterprets the special master's decision. The court agrees with respondent that, "[c]ontrary to petitioner's allegation, the special master clearly did not 'equate reasonable basis with preponderant or prima facie evidence of vaccine

causation.'"  Resp't's' Mem. 12 n.7 (quoting Pet'r's Mem. at 15).  Rather, the special master reasoned that "[b]ecause reasonable basis is an alternative way to become eligible for attorneys' fees, reasonable basis to support a claim <u>cannot be</u> based upon the same (preponderance of the evidence) standard."  Fee Dec., 2013 WL 6234660 at *13 (emphasis added).  Instead, something less than preponderant evidence is required for reasonable basis.  <u>Id.</u>  The special master simply declined to define what affirmative evidence would be required to support reasonable basis.  <u>See id.</u> at 18–24.

Lastly, petitioner complains that "the special master failed to explain what constitutes enough 'evidence' for a petitioner to establish reasonable basis."  Pet'r's Mem. 15.  The special master did not err in his refusal to define specifically "how much" evidence, or what evidence, is required to satisfy the reasonable basis standard.  As respondent succinctly explains, "the special master did not have to 'weigh' a quantum of evidence because petitioner produced no relevant evidence to support her causation claim."  Resp't's Mem. 12.

In sum, section 300aa-15(e)(1) provides that the special master may exercise discretion to award an unsuccessful petitioner attorneys' fees and costs, but only if the petitioner filed the petition in good faith and had a reasonable basis for his or her claim.  Reasonable basis is an objective standard that considers the totality of the circumstances.  This standard is consistent with the underlying spirit and purpose of the Vaccine Act, and strikes the right balance between an award of fees to counsel who have represented unsuccessful claimants and the statutorily expressed congressional intent to impose some limitations on fee awards.  Both the statute and case law may contemplate the evidentiary standard set out by the special master, but neither the statute nor case law compels it.  Accordingly, the court declines to do so.

B.     The Special Master Did Not Abuse His Discretion In Denying Fees

The special master did not abuse his discretion in determining that petitioner was not entitled to attorneys' fees or costs on her unsuccessful petition for compensation.  <u>See</u> Fee Dec., 2013 WL 6234660 at *18–24.  Although the special master ventured too far in his attempt to impose an evidentiary test for reasonable basis under § 300aa-15(e)(1), he properly exercised his discretion, in this case, to deny fees to petitioner based on the complete lack of evidentiary support for her claim and counsel's delayed due diligence.

As the special master correctly noted, petitioner "cite[d] to no evidence supporting a causal connection between the flu vaccine and Ms. D'Esposito's death."  Fee Dec., 2013 WL 6234660 at *18.  An examination of the record supports the special master's conclusion.  None of her medical records reflected a causal connection; rather, her medical records detailed comorbidities and attributed Ms. D'Esposito's injuries and death to non-vaccine-related causes.  In addition, neither the hospital discharge summary, nor her death certificate, mentions the flu vaccine.  Further, there is no evidence in the record that any of her treating providers were willing to attribute any of her injuries to the

vaccination.  Lastly, although counsel consulted with three immunologists, no one was willing to opine on causation in this case.  Instead, petitioner relies solely on temporal proximity and petitioner's affidavit, but these materials are not sufficient.  See § 300aa-13(a)(1) (A special master may not award compensation "based on the claims of a petitioner alone, unsubstantiated by medical records or medical opinion."); see also Cedillo v. Sec'y Health & Hu man Servs., 617 F.3d 1328, 1347–48 (Fed. Cir. 2010); Caves v. Sec'y Health & Human Servs., 100 Fed. Cl. 119, 135–37 (2011), aff'd per curium without opinion, 463 F. App'x 932 (Fed. Cir. 2012).

In support of her reasonable basis arguments, petitioner also points to the activities of her counsel in preparing and pursuing the claim.  Contrary to the special master's finding, see Fee Dec., 2013 WL 6234660 at *19, the court is persuaded that counsel's activities can inform the totality of the circumstances that factor into a reasonable basis analysis.  The court cannot say, however, that the special master abused his discretion by not crediting counsel for their work in this case.  Reasonable minds can differ on whether counsel's activities reflected sufficient, timely due diligence.  See Fee Dec., 2013 WL 6234660 at *2–3 (detailed recitation of CHC-C's work before filing petition); id. at *4–5 (detailed recitation of CHC-C's work after filing the petition); id. at *5–6 (detailed recitation of Moxley's work).

For example, although CHC-C engaged in some effort to procure Ms. D'Esposito's medical records before filing the petition, one could construe the firm's timesheets to reflect an earnest effort only after they filed the petition.  See CHC-C's Timesheets.  In addition, there is no evidence that CHC-C engaged in any survey of medical or legal literature concerning causation, such as a review of medical studies or vaccine caselaw, until January 2008, five months after the petition was filed.  See CHC-C Timesheets at 15.  Likewise, communications with experts did not begin in earnest until July 2008, after respondent had filed its report.  Id. at 18.  While the court does not require, as a rule, that the firm engage in causation research or expert communications earlier, an earlier effort arguably was warranted in this case given that counsel knew or should have known there was no evidence of causation in the records, no support for causation from treating providers, and ample evidence of non-vaccine-related comorbidities.  Even an earlier telephone call to one of the firm's regularly retained experts might have provided some evidence of timely due diligence.

The petition was filed on the eve of the expiration of limitations and the facts here indicate that counsel played a role in the delayed filing of the petition.  Ms. Chuisano approached the firm in March 2005, but the petition was not filed until June 2007.  See Fee Dec., 2013 WL 6234660 at *2–3.  During the two year period before counsel filed the petition, counsel largely placed the burden of assembling records on Ms. Chuisano, and did not bring its expertise in procuring records to bear until sometime later.  The court will not encourage delays in the filing of petitions, or delay in the exercise of other

due diligence, by sanctioning a bright-line rule that finds the existence of a reasonable basis for every claim filed on the eve of the limitations period.

Petitioner insists that her case "had a reasonable basis in medicine and literature" that was "known to counsel and revealed to the [special] master." Pet'r's Mem. 15. The court agrees with respondent, however, that "[t]his assertion is specious and without any basis in the record." Resp't's Mem. 14. The only evidence petitioner offered to support causation-in-fact was a temporal proximity between the vaccination and her injury, and an affidavit detailing her subjective belief of vaccine-related injury. Counsel's own unsupported medical theory does not provide evidence of causation-in-fact; nor is it sufficient to create a reasonable basis to support a claim. Further undercutting petitioner's assertion that she had a reasonable basis for bringing her claim is the refusal of the three consulted immunologists to opine favorably about causation.

Petitioner contends that her "reaction to this vaccine" is "indisputable." Pet'r's Mem. 17; see also id. at 18 (arguing that "medical records demonstrated that Ms. D'Esposito became ill soon after the vaccine and that no other cause was identified for that illness"). But, as a factual matter, petitioner's assertion is not only unsupported by the medical records, but is contradicted by them.

Petitioner presses for consistency in the decisions of the special masters and this court, Pet'r's Mem. 1, 3–4, 7–8, although such is not required as a matter of law, see Hanlon v. Sec'y Health & Human Servs., 40 Fed. Cl. 625, 630 (1998), aff'd, 191 F.3d 1344 (Fed. Cir. 1999). Petitioner erroneously relies on the case of Davis v. Secretary of Health and Human Services, 105 Fed. Cl. 627, 637 (2012). Pet'r's Mem. 8. In Davis, the court "g[ave] weight to the outcome" in a similar case in which a special master had found that a claimant had established causation and was entitled to compensation. 105 Fed. Cl. at 637. However, the court also noted that "[t]here is nothing inherently improper in the disparate outcomes of these two cases, of course." Id. (explaining further that there were salient differences between the two cases).

The special master's decision in this case finds support in the caselaw. As the special master points out, the Court of Federal Claims entered a similar decision on similar facts in Silva v. Secretary of Health and Human Services. Fee Dec., 2013 WL 6234660 at *21 (discussing Silva, 108 Fed. Cl. at 401, aff'g Case No. 10-101V, 2012 WL 2890452 (Fed. Cl. Spec. Mstr. June 22, 2012)). In that case, the court affirmed the special master's decision, finding he did not abuse his discretion in denying fees to attorneys on an unsuccessful petition.[10] Silva, 108 Fed. Cl. at 405. As in the case at bar, Ms. Silva's attorneys filed the petition with little preliminary investigation of her claim. Id. at 403–04. Ms. Silva ultimately failed to offer any evidence of causation-in-fact and

---

[10] Special Master Moran, as well as petitioner's counsel CHC-C, were involved in that case, just as they are here.

her case was dismissed for lack of proof.  Id.  The special master denied fees, and this court affirmed.  Id. at 405.  The failure to offer a medical opinion was not the sole reason for the denial of fees; rather, other factors were at play, such as counsel's delay in reviewing records that were in counsel's possession when the petition was filed; counsel's failure to account for records that cast doubt on the proposed causation theory; counsel's general lack of due diligence; and the complete lack of any evidence of causation-in-fact.  See id.

In Austin v. Secretary of the Department of Health and Human Services, the special master awarded fees to CHC-C in a similar factual circumstance, but the special master acknowledged that "[t]he issue of [whether a] reasonable basis [existed] to file and maintain this claim [was] a very close one."  No. 10-362V, 2013 WL 659574, *15 (Fed. Cl. Spec. Jan. 31, 2013).  In that case, petitioner's counsel had a twenty-month period in which to process the potential claim before filing, but no effort was made to obtain a review by a medical expert.  Id. at *5.  However, counsel could cite to at least one statement by a medical provider to support causation and timing.  Id. at *6.  The special master reasoned that this single notation "salvage[d] the reasonable basis for this case [because it] suggest[ed] a link between [the injury] and [petitioner's] vaccination."  Id. at *11.  Thus, the special master "conclude[d] that there was a reasonable basis, albeit an extremely weak one, to file and maintain this claim, up to the point when a favorable expert report could not be obtained."  Id.

Although petitioner asserts, Pet'r's Mem. 7, that the events surrounding Ms. D'Esposito's death are "almost indistinguishable from the . . . successful death-benefit claim" in Bragg v. Sec'y Dep't Health & Human Servs., No. 08-477V, 2012 WL 404773 (Fed. Cl. Spec. Mstr. Jan. 18, 2012), this is simply not the case.  Mr. Bragg died after receipt of a flu vaccine, with a diagnosis of sepsis.  Bragg, 2012 WL 404773 at *1–2.  He had been in good health before the vaccine was administered and died within days of the vaccine administration.  Id.  At least one treating physician expressed concern regarding a possible causal connection between the flu vaccine and Mr. Bragg's declining medical health.  Id. at *3.  The hospital sent a vaccine adverse event report (VAER) to the Center for Disease Control, reflecting some concern of a vaccine-related injury.  Id.  Counsel submitted numerous articles reflecting medical studies and other literature to support causation.  Id. at *3–6.  An expert opined on causation.  Id. at *12.  And, petitioner ultimately prevailed on the compensation claim.  Id. at *30.  None of these facts or circumstances are present in this case.

The court does not question CHC-C's good faith in pursuing this claim on petitioner's behalf.  Moreover, the court might have sustained the original reduced fee award to CHC-C had it come before this court on review; however, it did not.  The special master's initial fee decision was withdrawn, and the court does not conclude that the special master abused his discretion in determining, on reconsideration, that the press

of the statute of limitations did not furnish CHC-C a reasonable basis for an award of its fees.

Petitioner contends that the special master had no authority to revisit the award to CHC-C. Pet'r's Mem. 11. But petitioner misses the mark. The special master properly reconsidered CHC-C's fees. As he correctly explained, Vaccine Rule 10(e) provides that a withdrawn decision is "void for all purposes and the special master must subsequently enter a superseding decision." Fee Dec., 2013 WL 6234660 at *8 (quoting Vaccine Rule 10(e)). "As a consequence of the withdrawal, it is as if the [initial fee decision] never issued." Id. As a result, CHC-C's original request for fees and costs was still pending and ripe for review. The special master, therefore, necessarily had to issue new findings with respect to CHC-C's fees. Both petitioner and respondent were afforded an opportunity to brief CHC-C's entitlement to fees on reconsideration, and petitioner now balks at the decision issued further to her request that the special master reconsider his earlier decision. The special master found, on the facts of this case, that CHC-C lacked a reasonable basis for bringing a claim on petitioner's behalf.

The special master also found that Mr. Moxley lacked a reasonable basis for continuing to pursue petitioner's claim after his seasoned colleagues at CHC-C had exerted multiple efforts to locate a medical opinion on causation and failed to obtain one. Even so, if Mr. Moxley had a reasonable likelihood of otherwise obtaining an expert, the court would have expected some record evidence to reflect that likelihood, such as a preliminary conference with a potential expert before he agreed to assume representation. In any event, Mr. Moxley should have pursued and exhausted his efforts to retain an expert in an expeditious manner immediately after he assumed representation in November 2009. Instead, Mr. Moxley continued the litigation for an additional one and a half years before moving on petitioner's behalf for a decision on the record in May 2011.

Respondent has correctly observed that "[a]s long as 'the special master has considered the relevant evidence,' 'drawn plausible inferences,' and stated 'a rational basis for the decision,' reversible error is extremely difficult to establish." Resp't's Mem. 9 (quoting Hines v. Sec'y Health & Human Servs., 940 F.2d 1518, 1528 (Fed. Cir. 1991)). Here, the special master considered relevant evidence, drew plausible inferences, and set forth a rational basis for his decision. Accordingly, the court sustains his decision.

## IV.   FEES ON APPEAL

The Court of Federal Claims also enjoys discretion to award a petitioner's fees and costs on motion for review, even if the motion is unsuccessful. § 300aa-15(e)(1); see Masias, 106 Fed. Cl. at 704 ("[M]embers of the Vaccine Bar should be encouraged to seek clarification of doctrine by way of appeal, even regarding the availability of attorneys' fees."). The court does not question counsel's good faith, but does find the motion for review wanting for reasonableness. Although the court declines to articulate a

bright-line test for reasonable basis, the court does not disagree with the factors the special master considered when denying fees. The special master's decision reflects a reasoned analysis in which he properly exercised his discretion to deny fees. As such, the court does not find counsel had a reasonable basis to seek review.

V.      CONCLUSION

        The special master's denial of attorneys' fees and costs was permissible under the Vaccine Act; accordingly, the court **SUSTAINS** the decision. It was not arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. The Clerk of the Court shall enter judgment accordingly. No fees or costs on review.

        IT IS SO ORDERED.

                                                     s/ Patricia Campbell-Smith
                                                    PATRICIA CAMPBELL-SMITH
                                                    Chief Judge